# Illinois Official Reports

## Appellate Court

---

### *People v. Torres*, 2021 IL App (1st) 200920

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GUMARO TORRES, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-20-0920 |
| Filed | October 18, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-17989; the Hon. Thaddeus L. Wilson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Samuel B. Steinberg, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE WALKER delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioner Gumaro Torres was found guilty of first degree murder, attempted first degree murder, and aggravated battery and sentenced to an aggregate term of 105 years' imprisonment. This court affirmed his convictions and sentence on direct appeal. On February 27, 2020, Torres filed a *pro se* petition for postconviction relief. On July 16, 2020, the circuit court dismissed the petition at the first stage. Torres appeals, arguing that the circuit court failed to summarily dismiss the petition within 90 days of docketing and acted without authority in tolling the deadline. For the following reasons, we reverse and remand for second stage proceedings.

¶ 2                                        BACKGROUND

¶ 3    On February 21, 2020, Torres placed a *pro se* postconviction petition in the prison mail system at Menard Correctional Center. On February 27, the circuit court docketed the petition and set the matter for a status hearing on March 12. On March 9, Illinois Governor J.B. Pritzker declared the entire state of Illinois a disaster area in response to the outbreak of COVID-19, and on March 12, the circuit court continued Torres's case to April 24.

¶ 4    During the pendency of the matter, the Illinois Supreme Court and the chief judge of the circuit court of Cook County, Timothy C. Evans (Chief Judge Evans) issued multiple orders regarding court operations and precautions designed to limit the spread of COVID-19.

¶ 5    On March 13, Chief Judge Evans, citing Illinois Supreme Court Rule 21(b) (eff. Dec. 1, 2008), entered General Administrative Order No. 2020-01 (Cook County Cir. Ct. Gen. Adm. Order 2020-01 (Mar. 17, 2020)). The order provided that, with certain exceptions, "all matters in all Districts and Divisions of the Circuit Court of Cook County, Illinois, are rescheduled and continued for a period of 30 days from the originally scheduled date," or the next business day if the thirtieth day was a weekend. *Id.* Additionally, all judges and employees were encouraged to work remotely and conduct business via phone or video for 30 days following the effective date of the order. However, judges in all divisions would be available in person to hear emergency matters. In the criminal division, preliminary hearings and jury trials in progress would proceed as scheduled, and the court would be in session for plea agreements. This order went into effect on March 17.

¶ 6    On March 17, the Illinois Supreme Court, pursuant to the general administrative and supervisory authority vested in it under article VI, section 16, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 16), entered an order establishing mandatory guidelines for Illinois appellate and circuit court proceedings. The order instructed that "[a]ll Illinois courts shall continue to establish and periodically update, as necessary, temporary procedures to minimize the impact of COVID-19 on the court system, while continuing to provide access to justice." Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020). Further, "[e]ssential court matters and proceedings shall continue to be heard by the Illinois courts" and "[a]ll non-essential court matters and proceedings should be continued or, where possible, conducted remotely via telephone or video or other electronic means." *Id.* All courts, in both civil and criminal matters, were permitted to "[m]odify or suspend any deadlines and procedures, whether prescribed by local rule or order, for a stated period ending no later than 30 days after the Governor's state of emergency declaration has been lifted." *Id.* The supreme court also suspended the operation of any supreme court rules "to the extent they are contrary to any provisions of this order." *Id.*

¶ 7        On March 30, Chief Judge Evans amended order No. 2020-01. The amended order provided that, with certain exceptions, "all matters in all Districts and Divisions of the court are rescheduled and continued for a period of 30 days from the originally scheduled court date or a date not more than 30 days after May 18, 2020, whichever is later." Cook County Cir. Ct. Gen. Adm. Order 2020-01 (Mar. 30, 2020).

¶ 8        On April 3, the Illinois Supreme Court ordered that "[t]he Chief Judges of each circuit may continue trials until further order of this Court." Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020). On April 7, the court clarified that such continuances are excluded from speedy trial statutes of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2018)) and Juvenile Court Act of 1987 (705 ILCS 405/5-601 (West 2018)). Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020).

¶ 9        On May 1, 2020, Chief Judge Evans again amended order No. 2020-01. The amended order provided that, with certain exceptions, "all matters in all Districts and Divisions of the court are rescheduled and continued for a period of 30 days from the originally scheduled court date or a date not more than 30 days after May 31, 2020, whichever is later." Cook County Cir. Ct. Gen. Adm. Order 2020-01 (May 1, 2020).

¶ 10       On May 20, 2020, the Illinois Supreme Court issued an order stating that, effective June 1, 2020, "each circuit may return to hearing court matters, whether in person or remotely, according to a schedule to be adopted for each county by the chief judge in each circuit." Ill. S. Ct., M.R. 30370 (eff. June 1, 2020).

¶ 11       On May 28, 2020, Chief Judge Evans again amended order No. 2020-01. The amended order provided that, with certain exceptions, "all matters in all Districts and Divisions of the court are rescheduled and continued for a period of 30 days from the originally scheduled court date or a date not more than 30 days after July 6, 2020, whichever is later." Cook County Cir. Ct. Gen. Adm. Order 2020-01 (May 28, 2020). Additionally, the order instructed that "[j]udges shall review pending cases to determine a new date that cases can be scheduled (triage of cases on a case-by-case basis)." *Id.*

¶ 12       On June 26, 2020, Chief Judge Evans entered an order stating that, "effective July 6, 2020, the circuit court will begin hearing all matters in all Districts and Divisions of the court with the exception of jury trials." Cook County Cir. Ct. Gen. Adm. Order 2020-02 (July 6, 2020).

¶ 13       On July 16, 2020, the trial court judge dismissed the petition in a written order. In the order, the court addressed the substantive claims and found the petition "frivolous and patently without merit." The order also included the following footnote:

> "Due to the COVID-19 crisis, the Circuit Court of Cook County closed effective March 17, 2020, for all matters except emergency bond motions. Both the Illinois Supreme Court and Chief Judge of the Cook County Circuit Court entered orders tolling most deadlines. Effective July 6, 2020, the Chief Judge reopened courts in a limited capacity, excluding jury trials, though most matters are still proceeding via remote videoconferencing. Based on these circumstances, this Court is excluding from the 90-day first stage review the period of March 17th - July 5th inclusive."

¶ 14       Torres mailed the notice of appeal on July 28, 2020, and it was filed on August 6, 2020. On August 14, 2020, this court appointed the Office of the State Appellate Defender to represent Torres.

¶ 15                                                    ANALYSIS

¶ 16        On appeal, Torres argues that this case should be remanded for second stage postconviction proceedings with the appointment of counsel because the summary dismissal order was entered more than 90 days after the docketing of the petition, and the circuit court judge had no authority to extend the 90-day deadline under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). We review *de novo* the circuit court's dismissal of a postconviction petition without an evidentiary hearing. *People v. Harris*, 224 Ill. 2d 115, 123 (2007).

¶ 17        The Act provides a procedural mechanism for a criminal defendant to raise a collateral challenge to the proceedings resulting in his conviction or sentence by establishing a substantial deprivation of a constitutional right that was not and could not have been raised on direct appeal. *People v. Domagala*, 2013 IL 113688, ¶ 32. "In noncapital cases, the Act provides a three-stage process for the adjudication of postconviction petitions." *Harris*, 224 Ill. 2d at 125.

¶ 18        At the first stage, the circuit court has 90 days to independently examine the petition, taking the allegations as true, to determine whether it is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). At this stage, the court considers the petition's substantive virtue rather than its procedural compliance. *People v. Boclair*, 202 Ill. 2d 89, 102 (2002). A petition is frivolous or patently without merit if it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* If the petition is not dismissed within 90 days, the court must order the petition to be docketed for further proceedings. 725 ILCS 5/122-2.1(b) (West 2020). "The 90-day time requirement is mandatory, and a trial court's noncompliance with the time requirement renders a summary dismissal order void." *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010).

¶ 19        The narrow issue we must address is whether the circuit court acted with authority when it tolled the mandatory 90-day deadline under the Act. Torres maintains that the court acted without authority because (1) there was no order or rule by the Illinois Supreme Court, the chief judge of the Cook County circuit court, or the presiding judge of the criminal division of the Cook County circuit court that extended, tolled, or nullified the 90-day deadline for first stage proceedings and (2) the court was able to perform its administrative duty of reviewing the postconviction petition at the first stage despite COVID-19 precautions.

¶ 20        The State argues that because Chief Judge Evans continued all nonemergency matters from March 17, 2020, through July 6, 2020, the trial court judge reasonably construed the continuances to exclude this period from the 90-day deadline. Additionally, the State contends that the court was closed during this period, except for emergency matters. Thus, the trial court judge could not have conducted an administrative review of the petition until after July 6, 2020.

¶ 21        We reject the State's arguments. The State cannot identify any order that expressly authorized the trial court judge to toll the 90-day deadline. No order by the Illinois Supreme Court ever tolled the deadline. Although, our supreme court's March 17, 2020, order permitted chief judges of the circuit court to temporarily modify or suspend "any deadlines and procedures," Chief Judge Evans never issued a local rule or order specifically modifying or suspending the 90-day deadline. Nonetheless, the State contends that the continuances effectively tolled the deadline. Essentially, the State argues that despite not having explicit

authority to toll the deadline, the trial court judge's decision was correct because he believed Chief Judge Evans's orders permitted it. We disagree.

¶ 22 Chief Judge Evans had the power to toll the 90-day deadline, but he did not because judges were still working remotely. The trial court judge could not unilaterally toll the deadline. The trial court judge's belief that he had such authority based on Chief Judge Evans's authority and the surrounding circumstance, even if reasonable, was insufficient. The 90-day deadline is mandatory, and the circuit court's noncompliance with the time requirement renders a summary dismissal order void. *Id.*

¶ 23 Additionally, the circuit court was not closed from March 17 to July 6, 2020. Judges were working remotely. On March 17, 2020, our supreme court ordered that "all non-essential matters and proceeding should be continued or, where possible, conducted remotely via telephone or video or other electronic means." Beginning on March 17, Chief Judge Evans also encouraged judges and employees to work remotely and conduct business via phone or video. On March 30, 2020, he specifically ordered judges and employees to work remotely. Therefore, the courts were open, albeit in a limited capacity. During first stage proceedings, the circuit court acts in a strictly "administrative capacity" by screening petitions that are without legal substance or obviously without merit. (Internal quotation marks omitted.) *People v. Tate*, 2012 IL 112214, ¶ 9. Working remotely did not prevent or limit the circuit court from acting in this administrative capacity. Here, a complete electronic record had been formed, which included the postconviction petition, and the petition could have been reviewed remotely within the 90-day deadline.

¶ 24 We acknowledge that the facts of this case are unique. COVID-19 is a deadly, highly transmissible virus that resulted in a worldwide pandemic. In recent times, no other event has required the court to completely restructure how it operates. Under extraordinary circumstances, courts had to swiftly devise a plan that continued to serve the ends of justice and ensured the safety of all participants. However, the trial court judge's decision to toll the 90-day deadline was without authority, and the summary dismissal of the petition is void. Accordingly, we reverse and remand for second stage proceedings.

¶ 25 CONCLUSION

¶ 26 For the foregoing reasons, the judgment of the circuit court is reversed and remanded for second stage proceedings with the appointment of counsel.

¶ 27 Reversed and remanded.